215 F.3d 315 (2nd Cir. 2000)
 UNITED STATES OF AMERICA, Appellee,
v.
JOSE GOMEZ PEREZ, also known as Hector Parra Cruz, also known as Gaston Guiterrez, also known as Riccardo Rios, also known as Sergio Guerra, also known as Ricardo M. Caballos, also known as Jose E. Vergara, also known as Jose Polomino, also known as Vincente Perez, also known as Jose Gomez, also known as Jose Colon, Defendant Appellant.
 Docket No. 00-1036
August Term, 1999
 UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
 Submitted: March 7, 2000
Decided: June 15, 2000
 
 Appeal from a judgment of conviction and sentence of the United States District Court for the Eastern District of New York (John Gleeson, Judge), entered on January 18, 2000, upon Defendant-Appellant's plea of guilty. Appeal Dismissed.
 Henriette D. Hoffman, The Legal Aid Society, New York, NY, for Defendant-Appellant.
 Loretta E. Lynch, United States Attorney for the Eastern District of New York, New York, NY (Peter A. Norling and Cecil C. Scott, Assistant United States Attorneys, of Counsel, on the brief), for Appellee.
 Before: OAKES, CALABRESI, and PARKER, Circuit Judges.
 PARKER, Circuit Judge:
 
 
 1
 On February 4, 2000, the government filed a motion to dismiss Defendant-Appellant Jose Gomez-Perez's appeal in this case, arguing that Gomez-Perez had waived all rights to appeal so long as his sentence was within the range stipulated to in the plea agreement. On February 18, 2000, Gomez-Perez's counsel notified this Court that she took "no position with respect to the government's motion." On March 8, 2000, this Court denied the government's motion without prejudice, and it ordered briefing on the question of whether Gomez-Perez's counsel should be required to submit a brief pursuant to Anders v. California, 386 U.S. 738 (1967), in the event that counsel concludes that there is no non-frivolous opposition to the motion to dismiss.
 
 
 2
 We now conclude that, in such a circumstance, counsel is required to submit a brief in accordance with Anders, but confined to certain discrete issues as outlined below. After reviewing the brief submitted by counsel in this case, we conclude that Defendant-Appellant's waiver of his right to appeal was knowing, competent, and voluntary, and that neither he nor his counsel has identified any other non-frivolous issues for appeal. We therefore dismiss the appeal.
 
 I. BACKGROUND
 
 3
 After serving an 18-month sentence for robbery, Defendant-Appellant Jose Gomez-Perez was deported to Colombia in February 1998. Gomez-Perez was subsequently apprehended in the United States and charged with illegal reentry into the United States, in violation of 8 U.S.C. § 1326. On September 23, 1999, Gomez-Perez signed a plea agreement in which he agreed to plead guilty to one count of illegal reentry. As part of this plea agreement, Gomez-Perez also agreed:
 
 
 4
 not [to] file an appeal or otherwise challenge the conviction or sentence in the event that the Court imposes a sentence within or below the range of imprisonment set forth in paragraph 2, even if the Court employs a Guidelines analysis different from that set forth in paragraph 2.
 
 
 5
 According to paragraph 2 of the plea agreement, the government estimated the likely range of Gomez-Perez's imprisonment as 46 to 57 months.
 
 
 6
 On September 23, 1999, the United States District Court for the Eastern District of New York (John Gleeson, Judge) conducted a plea hearing pursuant to Rule 11 of the Federal Rules of Criminal Procedure. During this plea hearing, the court specifically stated:
 
 
 7
 If you plead guilty and I accept your plea, you would be giving up your right to a trial, you would be giving up the rights you have during trial that I've been going over with you.
 
 
 8
 I'll enter a finding that you are guilty of this lone count against you, this only count, based on your own admission of guilt here today and you won't have a right to appeal to a higher court from my finding that you are guilty.
 
 
 9
 Do you understand?
 
 
 10
 Gomez-Perez indicated that he understood. The court later asked if Gomez-Perez understood that he was "giv[ing] up [his] right to appeal to a higher court from any sentence that [the court] imposed as long as the jail term portion of the sentence [was] 57 months or less." Gomez-Perez responded that he understood. Following a further colloquy with Gomez-Perez, the court found that there was a factual basis for the plea, and that it was knowing and voluntary. The court therefore accepted the plea.
 
 
 11
 On January 6, 2000, the district court conducted Gomez-Perez's sentencing hearing. The court first ascertained that Gomez-Perez had received a copy of the Presentence Report (the "PSR"), and that someone had translated its contents for him. The district court then addressed Gomez-Perez's prior written request for a downward departure. After considering Gomez-Perez's various arguments for a downward departure, the district court accepted one of his arguments, and it therefore departed from a Criminal History Category 4, as suggested by the PSR, to a Criminal History Category 2, on the ground that the criminal history level "overstate[d] the seriousness of [his] prior criminal conduct." The district court then accepted the PSR's recommended offense level calculation of 21 and imposed a sentence of 41 months, which represented the bottom end of the applicable guideline range.
 
 
 12
 On January 6, 2000, Judge Gleeson signed a written judgment memorializing the oral pronouncement of sentence, which was entered on January 18, 2000. On the same day, Gomez-Perez filed a pro se notice of appeal.
 
 
 13
 On February 9, 2000, the government filed a motion to dismiss Gomez-Perez's appeal. The government's Affidavit in Support of Motion to Dismiss Appeal reiterates that Gomez-Perez agreed to waive all rights to an appeal as part of his plea agreement, so long as his sentence was "within or below the Sentencing Guideline range of 46 to 57 months incarceration." See Scott Aff. of 2/8/2000, ¶ 3. The affidavit also states that Gomez-Perez was sentenced to 41 months, see id. at ¶ 5, and that Gomez-Perez's appeal should therefore be dismissed pursuant to the plea agreement. On February 18, 2000, Gomez-Perez's trial counsel, The Legal Aid Society, submitted a Response to Motion for Dismissal of Appeal, which stated that "we take no position with respect to the government's motion." See Hoffman Aff. of 2/18/2000.
 
 
 14
 On March 8, 2000, this Court denied the government's motion to dismiss, and ordered that "Government and appellant's counsel are directed to brief, by March 27, 2000, the issue of whether a brief pursuant to Anders v. California, 386 U.S. 738 (1967), must be filed in order to comport with the Sixth Amendment guarantee of effective assistance of appellate counsel, and if so, what issues should be addressed by the Anders brief." On March 22, 2000, and in keeping with this Court's prior scheduling order of February 2, 2000, counsel for Gomez-Perez filed an Anders brief, as well as a motion to be relieved as counsel.
 
 
 15
 On March 28, 2000, the government and counsel for Gomez-Perez both filed briefs in response to our March 8, 2000, Order. On April 11, 2000, the government filed a motion for summary affirmance. On April 20, 2000, this Court issued an order notifying Gomez-Perez that his counsel had filed an Anders brief and notifying him that he had until May 10, 2000, to submit any additional arguments to the court on his own behalf. To date, Gomez-Perez has not responded to the April 20, 2000, order.
 
 II. DISCUSSION
 
 16
 Plea agreements that include a waiver of a defendant's right to appeal his conviction and sentence are a relatively recent phenomenon. See David E. Carney, Note, Waiver of the Right to Appeal Sentencing in Plea Agreements with the Federal Government, 40 Wm. & Mary L. Rev. 1019, 1020-23 (1999) (noting that appeal waivers came into existence following the Sentencing Reform Act in 1984, but there was no uniform federal policy until 1997). This Court has repeatedly upheld the validity of such waivers, with the obvious caveat that such waivers must always be knowingly, voluntarily, and competently provided by the defendant. See United States v. Rosa, 123 F.3d 94, 97 (2d Cir. 1997) (citing United States v. Maher, 108 F.3d 1513, 1531 (2d Cir. 1997); United States v. Jacobson, 15 F.3d 19, 22-23 (2d Cir. 1994); United States v. Salcido-Contreras, 990 F.2d 51, 53 (2d Cir. 1993) (per curiam); United States v. Rivera, 971 F.2d 876, 896 (2d Cir. 1992)); Felder v. Unites States, 429 F.2d 534 (2d Cir. 1970). We have also held that, in some circumstances that implicate a defendant's constitutional rights, a waiver of the right to appeal may be invalid and should not be enforced. See Jacobson, 15 F.3d at 23.
 
 
 17
 When upholding the validity of these waivers, we have recognized that the benefits of such waivers inure to both government and the defendant alike, with the government receiving the benefit of reduced litigation, and the defendant receiving some certainty with respect to his liability and punishment. Rosa, 123 F.3d at 97. In seeking to reap its bargained-for benefit, the government in this case filed a motion to dismiss the appeal, and Gomez-Perez's response to this motion would normally be required far in advance of the due date for his brief and before counsel has had full opportunity to review the record.[1]
 
 
 18
 We have not previously addressed the nature of defense counsel's obligations to her client under Anders when a defendant has executed such a waiver of the right to appeal, but has nonetheless filed a notice of appeal, and where the government files a motion to dismiss based on the defendant's waiver. We now hold that in such a situation, if defense counsel concludes there is no basis to contest the validity of the waiver then she is responsible for submitting a brief similar to that required by Anders that addresses only the limited issues of: (1) whether defendant's plea and waiver of appellate rights were knowing, voluntary, and competent, see United States v. Ibrahim, 62 F.3d 72, 74 (2d Cir. 1995) (per curiam) (holding that "Anders briefs . . . should always contain a discussion regarding a guilty plea"); or (2) whether it would be against the defendant's interest to contest his plea, see id.; and (3) any issues implicating a defendant's constitutional or statutory rights that either cannot be waived, or cannot be considered waived by the defendant in light of the particular circumstances, see, e.g., Rosa, 123 F.3d at 98; United States v. Yemitan, 70 F.3d 746, 748 (2d Cir. 1995); Jacobson, 15 F.3d at 22-23.
 
 
 19
 In such cases, if, after reviewing the record, defense counsel is satisfied that there are no non-frivolous issues for appeal, defense counsel should file an Anders brief, confined to these issues alone, and an accompanying motion seeking to be relieved as counsel. Counsel must also advise the defendant-appellant in accordance with our normal Anders procedures, and the defendant-appellant must be given an opportunity to respond.
 
 
 20
 This motion, as well as the government's motion to dismiss, can then be decided by a Motions Panel of this Court, unless it concludes that there are non-frivolous issues for appeal. If the Motions Panel reaches such a conclusion, the motion to be relieved as counsel should be denied, as should the government's motion to dismiss, and the case should then be heard by a Merits Panel in accordance with our standard procedures. See Instructions for Appealing a Criminal Case to the U.S. Court of Appeals for the Second Circuit (January 1997).
 
 A. Issues in the Brief
 
 21
 In preparing an Anders brief in these circumstances, counsel should examine both the adequacy of the defendant's waiver and whether the defendant's plea and sentence were in accord with the applicable law. In some cases, a defendant may have a valid claim that the waiver of appellate rights is unenforceable, such as when the waiver was not made knowingly, voluntarily, and competently, see United States v. Ready, 82 F.3d 551, 556-57 (2d Cir. 1996), when the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases, see Jacobson, 15 F.3d at 22-23, when the government breached the plea agreement, see Rosa, 123 F.3d at 98 (citing United States v. Gonzalez, 16 F.3d 985, 990 (9th Cir. 1993)), or when the sentencing court failed to enunciate any rationale for the defendant's sentence, thus "amount[ing] to an abdication of judicial responsibility subject to mandamus." Yemitan, 70 F.3d at 748.
 
 
 22
 These exceptions to the presumption of the enforceability of a waiver, however, occupy a very circumscribed area of our jurisprudence. Accordingly, we have upheld waiver provisions even in circumstances where the sentence was conceivably imposed in an illegal fashion or in violation of the Guidelines, but yet was still within the range contemplated in the plea agreement. See id. (holding that 18 U.S.C. § 3742(c)(1), in tandem with plea agreement, prevented defendant from challenging his sentence based on alleged illegality unless the sentence violated public policy constraints); accord United States v. Feichtinger, 105 F.3d 1188, 1190 (7th Cir. 1997) ("[A]n improper application of the guidelines is not a reason to invalidate a knowing and voluntary waiver of appeal rights."). We have also upheld waiver provisions when the plea agreement did not contain a specific, estimated sentencing range, so long as the defendant's actual sentence was reasonably foreseeable at the time of defendant's plea and was not "fundamentally unfair." Rosa, 123 F.3d at 102.
 
 
 23
 But while these exceptions may be few in kind and sporadic in frequency in comparison with the bulk of cases where waivers are presumptively enforceable, they are the exceptions that must drive our rule requiring an Anders brief. To ensure that the constitutional rights that form the bases for the exceptions are not trampled by the increasing practice of including appeal waivers in plea agreements, we hold that defendant's counsel must file an Andersbrief addressing only the narrow issues addressed in the above paragraphs.
 
 
 24
 We see nothing that would justify any departure from the dictates of Anders simply because a defendant has entered into a plea agreement including a waiver of his right to appeal. Our ruling is therefore consistent with Anders's command of maintaining certain "safeguards" and with its "prophylactic framework." Smith v. Robbins, 120 S. Ct. 746, 757 (2000) (citations omitted). Mindful of the benefit of reduced litigation sought by the government, however, we hold that counsel submitting an Anders brief in these situations is restricted to the narrow subset of issues previously outlined.
 
 
 25
 This being so, our above recitation of cases representing prior circumstances in which we have held waivers unenforceable should in no way be considered exhaustive. Instead, these cases should comprise the backdrop by which counsel begins her review of a defendant's case prior to determining whether an Anders brief is warranted. If counsel subsequently determines that an Anders brief is appropriate and thereafter files such a brief, this Court must, as we have done in prior cases involving Anders briefs, afford the defendant an opportunity to raise pro se any issues he feels merit discussion. See Anders, 386 U.S. at 744.
 
 
 26
 We note that both the government and counsel for defendant-appellant are in agreement on this issue. Both parties readily agree that Anders briefs serve an important function, even in cases where, as here, a superficial review of the defendant's case would seem to indicate that he has previously relinquished any right to appeal. Both parties similarly agree that defendant must be provided notice and an opportunity to respond once an Anders brief has been filed.
 
 
 27
 B. Future Procedures in Cases Involving Motions to Dismiss Based on Waivers of a Right to Appeal
 
 
 28
 We must still address the procedures to be used in cases such as this one. Because the government filed a motion to dismiss in this case, the issue of Gomez-Perez's waiver was raised before his counsel had the opportunity to prepare an Anders brief. Since we cannot determine whether it is appropriate to grant such a motion until we are convinced that defendant's waiver and sentence satisfied the above requirements, we will, in the future, reserve judgment on such motions until such time as defendant and defendant's counsel have had an opportunity to address these issues. Specifically, counsel shall respond in accordance with the normal briefing schedule.
 
 
 29
 In the event that defendant's counsel files an adequate Anders brief, and the defendant likewise fails to point to any non-frivolous issues pertaining to the plea agreement and appeal waiver, a Motions Panel will then review the record and determine whether it is appropriate to dismiss the appeal. In cases where dismissal is not appropriate, the government's motion will be denied, and the matter will be sent to a Merits Panel, in accordance with normal Anders procedures.
 
 C. The Merits of Gomez-Perez's Appeal
 
 30
 In this case, Gomez-Perez's counsel has submitted an adequate Anders brief that addresses the issues we have identified above, and this Court notified Gomez-Perez that his counsel now seeks to be relieved.[2] Gomez-Perez has not responded with any non-frivolous issues for appeal, and we conclude that there are no other non-frivolous issues for appeal. After reviewing the Anders brief, as well as the record, we determine that Gomez-Perez knowingly, voluntarily, and competently waived his right to appeal. As a result, the appeal is dismissed.
 
 III. CONCLUSION
 
 31
 For the foregoing reasons, the appeal is dismissed.
 
 
 
 Notes:
 
 
 [1]
 Rule 27(a)(3)(A) of the Federal Rules of Appellate Procedure requires that any response to a motion be filed within ten days of service of that motion "unless the court shortens or extends the time."
 
 
 [2]
 We note that this Court notified Gomez-Perez because of the unusual circumstances of this case, which were precipitated by our prior briefing order. In the future, an attorney filing an Anders brief must adhere to standard procedure by including with his Anders brief an affidavit certifying that she has notified his client that an Anders brief has been filed, which will likely result in affirmance, and that the client thereafter has 14 days to respond with any issues he believes are meritorious.